This suit was brought by plaintiff in error to recover of defendant in error the sum of $30,000 damages for personal injuries alleged to have been caused by the negligence of the defendant.
The petition alleges, in substance, that plaintiff at the time of his injury was in the employment of the defendant city as a helper upon a garbage truck operated by the city, and that it was his duty to help collect and place garbage upon the truck to be carried away, and in the performance of his work it was necessary for him to hold to the sides of the bed of the truck; that on the night of the 15th of May, 1925, he was at work on the truck, and while he was holding to a side of the truck bed, the latter gave way, and he was caused to fall and suffer the injuries of which he complained.
The ground of negligence alleged was the failure of the defendant to use reasonable care to provide plaintiff a safe place in which to perform his work, in that the defendant failed to use ordinary care to maintain the truck, especially the sides thereof, in a reasonably safe condition by failing to provide sufficient bolts and pins to securely fasten the sides.
"That at the time and place aforesaid, solely by reason of carelessness and negligence of said defendant, in failing to furnish said plaintiff with a safe place to do his work as an assistant on the garbage truck aforesaid, and the negligence of said defendant in failing to insert the bolts and pins and to see to the bed of said truck being securely fastened and protected to see that the said truck was safe and secure, while the plaintiff was at work on said garbage truck and while holding to the side of said bed of said truck while engaged at his work as aforesaid, the bed of said truck gave way, and it fell over by reason of not being properly bolted, pinned and securely held together and threw the plaintiff out over the side of the said truck to the pavement with great force and violence causing the plaintiff serious and permanent wounds."
The evidence shows that the truck on which plaintiff worked had a box-shaped receptacle for trash and garbage attached to the floor of the truck behind the driver's seat. This box-shaped portion of the body of the truck is firmly fastened to the floor of the truck, and is solidly constructed to a height of about three feet, its sides and ends being firmly *Page 1050 
nailed or bolted together. On each of these solidly fastened sides there is a board about 10 inches wide which is attached to the solid portion of the structure by hinges, and when the load in the truck increases so as to require the sides to be made higher these hinged boards are raised and held in place by bolts so attached to the end of the truck as to extend through a hole in the end of the hinged side board, the side boards being fastened on to the bolts by an iron pin placed through a hole in the end of the bolt. There are two of the bolts at each end of these loose side boards.
From the undisputed evidence of both plaintiff and his witness, Herbert Sanches, who was at work with plaintiff on the night of the accident, there were only two pins or bolts available on the truck to hold up the flap boards, one pin being inserted at the front end on each side. There had only been the two pins in use on the truck for quite a long while before plaintiff's injury.
The truck had a crew of three men, a white driver and plaintiff and his witness, Sanches, whose duty it was to collect the garbage and place it upon the truck. In starting to collect a load the flap boards or hinged sides would be left down and both of the men would work from the ground and throw the garbage into the truck bed. When the load had been built up to about level with the solid sides of the bed, the hinged side boards would then be raised and fastened and one of the men would get up into the truck bed on top of the load for the purpose of receiving the receptacles as they were passed up from the ground by the other.
Shortly before plaintiff's fall the load had been built up sufficiently to require that the hinged side boards be raised and fastened, and that was done with the use of the two pins available, one pin being inserted in the front end on each side. At that time the load of garbage was about even all over the truck. Plaintiff got up into the truck bed, and was standing up in it about midway holding on to the side of the bed while the truck was in motion, and when some obstruction in the street was run over he fell from the truck and was injured. With reference to the cause of his fall he testified: "He (the driver) was running pretty fast and the street was torn up and I heard something go `wham' and I didn't know anything else. The truck hit something in the street. At that time I was standing about middle ways of that truck holding on to the side of the bed. That was necessary in loading and unloading the garbage to stand up in the truck this way with your legs spraddled out and catching hold of the sides of the bed with your hands. * * * The side of the truck I was on fell. I don't know what part fell. I know the side fell. I never seen the truck after I fell. I don't know any more about it. I don't know nothing about which way I went or what I done. I just know I fell and couldn't tell what happened. I just hit the ground."
The only other evidence having any bearing on the cause of the plaintiff's fall came from Sanches, who testified: "We put the boards up before we left Twenty-second and Strand and about Twenty-second street was being paved and it was all torn up and as we went down there we must have jolted the bolts out and threw John out of the wagon. We didn't miss John until we got to Twenty-third and Postoffice. Then we saw he was gone and we goes back down Market Street walking and looking for him; we were looking for John and the first time we didn't see him and when we got back to the truck, we noticed that the trash had been spilling out of it, and we followed the trash back where it had been spilled out and we seen something laying there by the side of the curb; there was a shadow and we couldn't see him very good and we went over there and looked in the dark and there lay John over there in the ditch. We found John laying there unconscious and we then rushed him to the hospital. * * * They were fixing Twenty-second and Strand that night; tearing it all up and fixing the track or taking up something there, they were putting down more bricks or something, we could tell by the jostling of the truck by the tracks, running over the tracks, you know, jolting. The jolting knocked the pin out you see and that is why John fell."
The plaintiff also testified: "I never saw one of these pins jump or jolt out of the bed of the truck when it had a load on it. I never saw one jolt out with such a load as we had on that night. I have seen the side boards down but I never saw a pin jolt out with a load as big as the one we had that night. I never seen a pin on those trucks jolt out when they were empty, but I have seen them coming empty with one side up and the other down, I didn't see the pin jolt out."
Sanches was not questioned as to whether he had ever known of a pin jolting out, nor was he, though his testimony apparently put him in a position to know, interrogated as to the condition of the flap boards on the truck bed, that is, whether they were found to be fastened up or hanging down after plaintiff's fall.
The court, among others, submitted to the jury the following issue: "Was or was not, the plaintiff John Williams caused to fall from the truck by reason of the collapse of the side of the bed of said truck to which he was holding?" To which the jury answered: "No."
In response to other issues submitted the jury further found: (1) That the defendant city was guilty of negligence in failing to equip the side of the truck with sufficient bolts or pins to hold it securely in place; (2) that such negligence was not the proximate cause of the injuries sustained by *Page 1051 
plaintiff; and (3) that plaintiff was not guilty of contributory negligence in holding to the side of the truck while it was in motion, knowing of the condition of the fastening.
The appellant presents six assignments and propositions upon which he insists the judgment should be reversed.
The first assignment complains of the refusal of the court to give the jury an instruction requested by plaintiff upon the issue of contributory negligence, and the duty of the defendant to furnish and maintain a safe place for the performance of plaintiff's work.
If these were proper charges upon the pleadings and evidence, their refusal was manifestly harmless in view of the findings of the jury that plaintiff was not guilty of contributory negligence, and that the defendant was negligent in failing to equip the sides of the truck with sufficient bolts and pins to hold them securely in place.
The second assignment complains of the refusal of the court to instruct the jury that assumed risk was not a defense to plaintiff's suit if the jury should find that the injury was caused by the pins, which held the sides in place, having been jolted out when the truck was driven over an obstruction in the street.
The issue of assumed risk, if raised by the evidence, was not submitted to the jury, and it therefore follows that refusal of the plaintiff's requested charge upon this issue was not error. The jury having found that plaintiff's injury was not caused by the collapse of the side of the truck to which he was holding, the question of assumed risk by the plaintiff in holding to the side of the truck is eliminated from the case and the refusal of the court to charge upon that issue cannot be complained of by appellant.
The third assignment complains of the failure of the trial judge to submit to the jury the question: "Was the falling of the truck bed caused by a pin jolting out of its socket, after the said truck had been driven over an obstruction in the street?" As before set out, the court submitted to the jury the question of whether the plaintiff "was caused to fall from the truck by reason of the collapse of the sides of the bed of said truck to which he was holding." The jury having answered the question submitted in the negative, it is wholly immaterial what caused the falling and collapse of the sides of the truck to which plaintiff was holding, and the error, if any, in refusing the requested charge is made harmless by the verdict.
The fourth and fifth assignments complain of the refusal of the court to submit questions which only affect the issue of appellee's negligence as alleged in the petition, and the sixth assignment complains of the refusal of the court to submit a question which could only affect the issue of contributory negligence on the part of plaintiff. Since the jury found in appellant's favor on both of these issues, the alleged errors complained of by these assignments were clearly harmless to appellant.
The only question which could arise upon the record before us is whether the evidence is sufficient to sustain the verdict of the jury that plaintiff's injury was not caused by the collapse of the sides of the truck, and this question is not raised by any assignment or proposition presented by appellant.
If the question was properly raised by the brief, we would not feel justified in holding upon the evidence before set out that the verdict of the jury is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong, and therefore would not be authorized to reverse the judgment on this ground
It follows from what we have said that the judgment must be affirmed, and it has been so ordered.
Affirmed.